236 A.2d 446.

STATE *vs.* ALBERT JOSEPH MAZZARELLA.

DECEMBER 21, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

254

POWERS, J. This is a criminal complaint and warrant on which the defendant was tried in the district court of the twelfth judicial district. The complaint originally charged that he "did then and there engage in bookmaking and did record and register bets in violation of Section 11-19-14 of the General Laws of Rhode Island, 1956." From a conviction in the district court on both counts, defendant seasonably appealed for a trial de novo in the superior court as provided in G. L. 1956, §12-22-1. See *State* v. *McGuire*, 90 R. I. 301, 157 A.2d 657 (1960). The case is before us on the defendant's bill of exceptions.

When the case came on for a trial before a jury in the superior court, counsel for defendant objected that the complaint was duplicitous in that it alleged two separate offenses. After some discussion, counsel for the state moved to amend the complaint by dropping the words "and there engage in bookmaking and did." The case then proceeded to trial on the charge that defendant "did then record and register bets in violation of Section 11-19-14 of the General Laws of Rhode Island, 1956."

In this regard, it is important to note that the complaint as thus amended charged that defendant "did then record *and* register bets" whereas the statutory offense as set forth in §11-19-14 is "who shall record *or* register bets * * *."

(italics ours) Clearly, the legislature intended to make either recording or registering a criminal offense, and proof of either in the case at bar would be sufficient, defendant not having moved, prior to trial, to amend the complaint so as to conform with the statutory language. See *State* v. *Cucca,* 102 R. I. 95, 228 A.2d 572 (1967), and *State* v. *Douglas,* 78 R. I. 60, 78 A.2d 850 (1951).

The evidence for the state establishes that defendant on July 11, 1963, and for some time prior thereto, was the owner and operator of the Club Royal in the city of Woonsocket. On the day in question a state police officer, hereafter referred to as Miller, who was present in the guise of a patron, observed another patron, hereafter referred to as Roderick, write on a matchbook cover which he then handed to defendant. The police officer had been present on prior occasions, and presumably reported to his superiors that there was evidence of bookmaking. In any event, pursuant to a previously arranged signal, state police officers armed with a search warrant raided the premises and placed defendant under arrest. During the search which ensued, one half of a matchbook cover on which was recorded a bet, was found on the floor behind the bar. The other half, on which a bet was also written, was found on the bar. The searching officers also found Armstrong sheets and ashtrays one of which contained burnt slips of paper. Additionally, the officers found a large sum of money on defendant's person. Exceptions were taken to the admissions of this evidence on the ground that the evidence related only to the charge of bookmaking which had been quashed on the state's motion.

Testifying for defendant, Roderick acknowledged that he had written on the matchbook cover, but flatly denied that he ever gave it to defendant. Rather, he insisted that prior to the arrival of the police he had torn the matchbook cover in two and with the entry of the police, threw the piece on the floor while the larger portion remained on the bar.

Based on this testimony, defendant requested that the trial justice charge the jury that to convict defendant of the offense for which he was being tried, they must find that "* * * the defendant did himself write the bet. There must be a writing and it must be by Mr. Mazzarella. The fact that some one else, Mr. Roderick, for example, wrote out a bet is not sufficient to make Mr. Mazzarella guilty of the charge."

The trial justice refused to give this instruction, and in fact charged that defendant could be found guilty even if Roderick had made the notations on the matchbook and then delivered it to defendant who accepted it as a bet.

The first of fourteen exceptions brought on the record and pressed by defendant is to the refusal of the trial justice to charge as requested. In support thereof, defendant relies heavily on *People* v. *Lambrix,* 204 N. Y. 261, 97 N.E.524 (1912). There, although considered in another posture, the New York court held that to be convicted of recording or registering a bet, it would be necessary to prove that the accused personally made the writing relied on, or directed its writing by another. The court based this conclusion on the proposition that it would necessarily follow that the writing of a bet by the bookmaker and delivering the slip to the bettor would make the latter equally guilty with the bookmaker as one who had recorded or registered a wager in violation of the statute. We are not persuaded that the reasoning of the New York court is sound. The word "record" as used in our statute, clearly refers to making a memorandum of some sort by the person charged. The word "register," however, is broader in scope, and includes the acceptance of a memorandum of a bet made by another and received by the person charged as a memorandum of a bet.

In *Commonwealth* v. *Pasquale,* 334 Mass. 669, 671, 138 N.E.2d 204, 206 (1956), the construction that we here give to the legislative intendment in making registering a bet a

penal offense was enunciated by the Massachusetts court thusly, "It is plain, we think, that a bet is also registered if the memorandum is made out by the bettor and delivered to the person receiving the bet." There, it was the person receiving the memorandum who had been charged with registering a bet, even though the memorandum had been written by someone else.

We think it clear then that in refusing to instruct as requested, the trial justice did not err and the exception taken to his refusal is overruled.

The next twelve exceptions argued by defendant are to a series of evidentiary rulings wherein the trial justice admitted into evidence testimony of Miller and another state trooper which tended to show that defendant was engaged in bookmaking on the day in question and on four other occasions.

It is defendant's contention that this evidence was prejudicial in that it related to an offense with which he was not charged and was of such a nature as to unfairly influence the jury in passing on the question of whether he was guilty of recording or registering a bet. It is the thrust of his argument with regard to these exceptions that evidence of other crimes is inadmissible when offered for the purpose of establishing guilt of the offense charged. He cites no authorities.

However, it is a fundamental and well-established rule that although evidence of prior criminal conduct is generally inadmissible, the rule is subject to the exception that such evidence may be shown where it tends to establish criminal intent as to the offense in question. *State* v. *Peters*, 86 R. I. 447, 136 A.2d 620 (1957); *State* v. *Colangelo*, 55 R. I. 170, 179 Atl. 147 (1935); *State* v. *McDonald*, 14 R. I. 270 (1883).

Our examination of the testimony which defendant claims to fall within the general exclusionary rule convinces us that it was properly received for the sole purpose of estab-

lishing a felonious design and intent. Moreover, cognizant of the valid purpose for which the testimony was offered, but concerned lest defendant be deprived of a fair trial, the trial justice cautioned the jury on three separate occasions during the trial as follows:

"* * * The jury is instructed that the only question before this jury today is whether or not the defendant was guilty of the particular offense on July 11th, 1963."

"* * * We are not concerned with what this defendant may have done in the past, but just what took place on July 11th."

"* * * I want to make it clear we are not interested in the defendant's previous conduct, we are interested in what took place on July 11th only."

The defendant's contentions of prejudicial error predicated on his twelve exceptions are without merit, and these exceptions are also overruled.

Finally, defendant contends that the trial justice erred in denying his motion for a new trial. He acknowledged that it is the burden of an appellant to convince this court that the decision of the trial justice was clearly wrong, or that he overlooked or misconceived material evidence.

In this regard, defendant contends that the trial justice misconceived the specific offense for which he was being tried, and predicated his decision on evidence that should not have been admitted. This argument, however, is merely another way of raising the same contentions made with regard to the evidentiary rulings on which we have already passed. Having concluded that the challenged evidence was properly received, it follows that the trial justice's decision on the motion for a new trial was not clearly wrong nor predicated on evidence which he either overlooked or misconceived.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff.

*Irving I. Zimmerman,* for defendant.